NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ELLIOT M. HIRSCH,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BEHAR and MIAMI SEPHARDIC CLUB, LLC,<br><br>Defendants. | Civil Action No. 25-1413 (RK) (JTQ)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Elliot M. Hirsch's ("Plaintiff") application to proceed *in forma pauperis* (ECF No. 5, "IFP")[1] and Complaint (ECF No. 1, "Compl."). For the reasons set forth below, the Court **TRANSFERS** this case to the United States District Court for the Southern District of Florida.

I.  **BACKGROUND**

The following facts are derived from Plaintiff's Complaint and are accepted as true only for the purposes of screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff, a New Jersey resident, alleges that Defendant David Behar ("Behar") posted four false statements or videos about him on Behar's own Instagram account and the Instagram account of co-Defendant Miami Sephardic Club ("Miami Sephardic"), which, Plaintiff alleges, "has approximately 5,000 followers." (Compl. ¶ 9.) Aside from listing a shared address for Behar and Miami Sephardic in Hallandale, Florida, Plaintiff does not otherwise explain the relationship between the two co-

---

[1] Plaintiff initially submitted a short-form IFP application on February 22, 2025, along with his Complaint. (ECF No. 1.) The Court subsequently directed Plaintiff to file the long-form IFP (ECF No. 4), which he did on April 4, 2025 (ECF No. 5.)

Defendants. (*Id.* ¶ 7.) On April 30, 2024, Behar posted, on both Instagram accounts, that three Jewish men broke into Temple Moses synagogue in Miami Beach, Florida, and vandalized it. (*Id.* ¶¶ 9, 10.) Behar referred to the men as "criminals" and sought the public's help in identifying them. (*Id.* ¶ 10.) In a second post the following day, Behar identified Plaintiff as one of the three suspects "based on information received." (*Id.* ¶ 11.) The post noted that Behar "could not conclude Plaintiff was guilty but asserted reliance on received information." (*Id.* ¶ 12.) The third post, published on May 4, 2024, included a video of Behar in which he repeated that Plaintiff was suspected of "vandalizing and trespassing at Temple Moses" and asserted that Plaintiff "caused thousands of dollars in damage." (*Id.* ¶ 13.) The video mentioned Plaintiff by name, and also claimed that Plaintiff was suspected of failing to provide his ex-wife a Jewish divorce document, called a Get.[2] (*Id.* ¶ 14.) Thereafter, Behar posted a picture of Plaintiff on Instagram captioned "[c]an someone please give me Mr. Elliot Hirsch's phone number?" (*Id.* ¶ 16.) Plaintiff denies all accusations against him, calling them "false" and asserting that he is "uncertain [that the events] even occurred." (*Id.* ¶¶ 18, 22.)

Plaintiff claims that, as a result of Behar's Instagram posts, he has been repeatedly contacted and accused by members of the Orthodox Jewish community, who he says were

---

[2] The legal actions relating to Plaintiff's divorce and subsequent accusations that he refused to provide his wife a Get are convoluted and ongoing. Since June 2021, Plaintiff has been litigating a case against twenty-eight defendants in connection with his divorce. *See Hirsch v. Beda et al.*, No. 22-5011 (E.D.N.Y 2022). The case, which originated in this District, was transferred to the Eastern District of New York in August 2022. (No. 22-5011, ECF No. 118.) In essence, Plaintiff alleged that the defendants "engaged in a web-based defamation campaign" against him "to harass and intimidate him into granting his wife . . . a Jewish divorce, otherwise known as a GET." (*Id.* at 1.) Plaintiff filed a total of six complaints, each of which were dismissed and then amended for various reasons. (No. 22-5011, ECF No. 219 at 2 n.1.) In March 2025, his federal claims were dismissed, and the court declined to exercise supplemental jurisdiction of his state claims. (*Id.*) As recently as April 24, 2025, Plaintiff has sought leave to file yet another amended complaint. (*See* No. 22-5011, ECF No. 215.) *See also Hirsch v. Miles, et al.*, No. 21-3846 (E.D.N.Y. 2021); *Hirsch v. Shammah, et al.*, No. 21-3938 (E.D.N.Y. 2021); *Hirsch v. Mastro, et al.*, No. 21-4142 (E.D.N.Y. 2021); *Hirsch v. Wade, et al.*, No. 21-4147 (E.D.N.Y. 2021); *Hirsch v. Kairey, et al.*, No. 22-5064 (E.D.N.Y. 2022).

"galvanized" and "encouraged" by Behar. (*Id.* ¶ 22.) According to Plaintiff, Behar even called Plaintiff's father's medical office causing Plaintiff's father to become angry. (*Id.* ¶ 35.) Plaintiff alleges a series of injuries stemming from Behar's actions, including, *inter alia*, anxiety, depression, post-traumatic stress disorder (PTSD), panic attacks, stress, insomnia, headaches, nausea, and loss of appetite. (*Id.* ¶ 24.) Plaintiff has also had difficulty securing employment and has "been rejected by several potential marriage prospects within the Jewish community." (*Id.* ¶ 29.)

Based on these four Instagram posts, Plaintiff brings three state causes of action against Defendants for: (1) Intentional Infliction of Emotional Distress; (2) Defamation; and (3) False Light. He seeks compensatory damages of "not less than" $10 million, "treble as well as punitive damages," and permanent injunctions enjoining Behar from speaking about Plaintiff on social media or otherwise contacting him and requiring him to remove all defamatory posts on social media. (*Id.* at 7–8.)

Plaintiff also filed a long-form application to proceed *in forma pauperis*. (*See* IFP.) The "monthly income" section of his application indicates that Plaintiff earns an average of $250 per month as an Uber driver, but the "employment history" section states that his gross monthly pay is approximately $20. (*Id.* at 2.) His IFP application further represents that he has $258.20 in his checking account. (*Id.*)

As for assets, Plaintiff asserts that he owns 1% of a home worth $1 million but explains: "[I] cannot sell my value [because it] would cost me more to sell than any income I would make if I sell it." (*Id.* at 3.) Attached as an exhibit to the IFP is a housing deed dated March 3, 2014. (*See id.* at 8.) According to the deed, the property, 1730 East 27th Street in Brooklyn, New York, was sold by Leona Husarsky to "Elliot Hirsch as to 1% interest, Jonathan M. Hirsch as to 49.5% interest

and Paulette Hirsch as to 49.5% interest." (*Id.*) The deed indicates that the property was sold for "ten dollars and other good and valuable consideration." (*Id.*) Plaintiff does not appear to pay rent for or mortgage on this property. Plaintiff also owns a 2018 Mazda 3, worth approximately $10,000, for which Plaintiff's father loaned him the money to purchase. (*Id.* at 3.) Insurance on the car is $2,000 per year, also paid for by a loan from his father. (*Id.* at 4.)

According to an attached judgment from the Supreme Court of New York, Kings County, dated March 29, 2023, Plaintiff owes his ex-wife $100,542.25. (*Id.* at 12–13.) He also has an eight-year-old daughter, on whom he uses food stamps to buy food when she is with him. (*Id.* at 3.) Plaintiff's approved application for SNAP benefits in Monmouth County is also attached to the IFP application. (*Id.* at 10.) Summarizing his financial picture, Plaintiff states: "my dad is loaning me money and paying all [housing] expenses for me and eventually when I get a job I will repay him[.] [I]f it weren't for my dad I would be living on the streets." (*Id.* at 5.)

## II.    DISCUSSION

Pursuant to 28 U.S.C. § 1915, the District Court may authorize a plaintiff to proceed *in forma pauperis* and order a complaint to be filed without requiring the prepayment of filing fees. 28 U.S.C. § 1915(a). Typically, the District Court engages in a two-step analysis when considering a complaint filed with an *in forma pauperis* application: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a). . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse,* No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)).

Courts throughout this District routinely exercise their discretion to *sua sponte* transfer a case to another district when, upon screen of an IFP complaint, it becomes apparent that the case was filed in the wrong venue. *See, e.g., Fletcher v. Barghri Hotels, Inc.*, No. 23-1714, 2023 WL 4407571, at *1 (D.N.J. July 6, 2023) (finding venue improper in the District of New Jersey and transferring the case as part of an IFP screen); *Scott v. Bailey*, No. 22-1155, 2022 WL 4104215, at *1–2 (D.N.J. Sept. 8, 2022) (same); *Polanco-Cabrera v. United States*, No. 15-6357, 2015 WL 6082129, at *1 (D.N.J. Oct. 13, 2015) ("Typically, at this time, this Court would screen the complaint pursuant to [the IFP statute] . . . . However, because venue is not proper in this District based on the allegations of the complaint, the action will be transferred to a court where venue is proper before this Court screens the complaint.").

In the Third Circuit, district courts must "expressly consider[] whether the interests of justice weigh in favor of *transferring* [Plaintiff's] complaint instead of dismissing it." *Fiorani v. Chrysler Grp.*, 510 F. App'x 109, 111 (3d Cir. 2013) (emphasis added); *see also Sinwell v. Shapp*, 536 F. 2d 15, 19 (3d Cir. 1976) (explaining that "28 U.S.C. § 1915 contains no express authorization for a dismissal for lack of venue. In the absence of any such statutory authority, it is inappropriate for the trial court to dispose of the case sua sponte on an objection to the complaint which would be waived if not raised by the defendant(s) in a timely manner").

Here, after a careful review of Plaintiff's Complaint, the Court concludes that venue is not proper in the District of New Jersey, but it is proper in the Southern District of Florida. Accordingly, transfer to the Southern District of Florida is the appropriate remedy.

Under 28 U.S.C. § 1391 venue is proper in the following judicial districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiff alleges that Defendants Behar and Miami Sephardic are both residents of Hallandale, Florida. (Compl. ¶ 7.) Since both Defendants reside in the same state, and indeed, in the same location, the judicial district that incorporates Hallandale, Florida—the Southern District of Florida—is a proper venue. *See* 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 89(c) (establishing the Southern District of Florida for, *inter alia*, Broward County).[3]

Plaintiff avers that "venue is proper pursuant to 28 U.S.C. § 1391(b)(2)" (Compl. ¶ 5), which provides that the judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred" is a proper venue, 28 U.S.C. § 1391(b)(2). Plaintiff's factual allegations, however, do not support this assertion because they fail to situate any of the events giving rise to his claim in New Jersey. According to Plaintiff, both Defendants reside in Florida, and the property that was allegedly vandalized was in Florida. (*See* Compl. ¶¶ 7, 9–10.) Plaintiff does not allege that Behar posted the defamatory statements while in New Jersey, that any incident occurred in New Jersey, or that the Defendants were ever in New Jersey. Other than stating his own address, Plaintiff does not mention New Jersey a single time in his pleading. In short, aside from Plaintiff residing in New Jersey, nothing else related to this case is alleged to have occurred here.

---

[3] The Court takes judicial notice of the fact that Hallandale, properly called Hallandale Beach, is a city located in Broward County, Florida. *See Municipalities in Broward County, FL*, Broward.org, https://www.broward.org/EconDev/Documents/Municipalities.pdf (last accessed Apr. 29, 2025).

Plaintiff alleges broadly that "[t]he incidents that gave rise to this action took place on social media platform Instagram." (*Id.* ¶ 8.) Construed liberally, Plaintiff seems to suggest that this District is the proper venue because Plaintiff saw and was affected by the Instagram posts while he was in New Jersey. But the fact that Plaintiff viewed Defendant's Instagram post in New Jersey is insufficient to establish this District as a proper venue. *See Equidyne Corp. v. Does*, 279 F. Supp. 2d 481, 487, 489 (D. Del. 2003) (finding no venue under 28 U.S.C. § 1391(b)(2) based on online message board post read in Delaware and recognizing that "if posting information on a message board on the Internet was sufficient to permit venue in every district that the posting was read, then venue could be found in every jurisdiction where an individual has access to a personal computer and the internet"). Additionally, although Plaintiff may have suffered harm in New Jersey, where he lives, "in defamation cases, it is not enough that the plaintiff may have suffered harm in a particular district" to establish proper venue. *Kravitz v. Niezgoda*, No. 12-487, 2012 WL 4321985, at *4 (E.D. Pa. Sept. 21, 2012).[4]

Having concluded that venue is improper, the Court considers whether transfer is appropriate. *See Fiorani*, 510 F. App'x at 111; 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). The Court finds that transfer—not dismissal—is appropriate in the interest of justice. *See Castillo v. Att'y Gen. of United States*, 109 F.4th 127, 135 (3d Cir. 2024) ("In considering whether transfer serves the interests of justice, courts generally consider several factors, including the reasonableness of a petitioner's confusion about the proper venue, whether transfer will delay

---

[4] The Court need not analyze whether "any defendant [would be] subject to the court's personal jurisdiction" because the Court has already determined that there is another district in which the action could be brought. *See* 28 U.S.C. § 1391(b)(3).

resolution, inconvenience to the parties, and waste of judicial resources.") Multiple factors weigh in favor of transfer, including Plaintiff's status as a *pro se* litigant, the obvious proper venue in the Southern District of Florida, the early stage of the case, and the fact transfer is preferable to dismissal when assessing venue as part of an IFP screen. *See Fioriani*, 510 F. App'x at 111 ("District courts generally should not dismiss in forma pauperis complaints for improper venue.").

The Court also notes—without deciding—that Plaintiff's IFP application paints a complicated but incomplete picture. He is not employed aside from the occasional job driving for Uber, has less than $300 in his checking account (an amount insufficient to cover the filing fee for this case), uses SNAP benefits to buy food for his daughter, and owes $100,000 in arrears to his ex-wife. (IFP at 2–3, 10, 12–13.) But Plaintiff also reports no expenses; his current lifestyle, including his car payments and household expenses, appears to be entirely supported by his family. (*See id.* at 5.) Clearly, Plaintiff is not subsisting on his meager Uber income alone. Plaintiff also reports owning a negligible stake in a million-dollar home in Brooklyn, but lists his address in New Jersey. (*Id.* at 3, 8.) Ultimately, while this Court recognizes that Plaintiff's IFP application alone might provide a basis to dismiss his Complaint, such a determination lies with the transferee court. *See Fletcher*, 2023 WL 4407571, at *1 (explaining that "Plaintiffs' IFP request and a full screening on the merits is proper" in the transferee court).

Accordingly, it is on this 6th day of May, 2025,

**ORDERED** that the Clerk of the Court shall **TRANSFER** this action to the Southern District of Florida and mark the action in this Court **CLOSED.**

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**